**SO ORDERED.**

**SIGNED this 11 day of June, 2007.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

| | |
|---|---|
| PARTITIONS PLUS OF WILMINGTON, INC., D/B/A PARTITIONS, INC., D/B/A STORM PROTECTION SYSTEMS, | Case No. 04-06776-8-JRL<br>Chapter 7 |
| Debtor. | |
| JAMES B. ANGELL, CHAPTER 7 TRUSTEE FOR PARTITIONS PLUS OF WILMINGTON, INC., D/B/A PARTITIONS, INC., D/B/A STORM PROTECTION SYSTEMS, | Adversary Proceeding No. 06-00148-8-AP |
| Plaintiff, | |
| v. | |
| RAY J. PENNINGTON, INC. and RAY J. PENNINGTON, | |
| Defendant. | |

_____

**ORDER**

This case is before the court on a motion to amend answer and a motion for summary judgment filed by Ray J. Pennington, Inc., as well as, a motion for summary judgment filed by the trustee. On May 21, 2007, the court conducted a hearing on these matters in Raleigh, North

Carolina.

## JURISDICTION AND PROCEDURE

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## FACTS AND BACKGROUND

Partitions Plus of Wilmington, Inc. filed a chapter 11 bankruptcy petition on September 1, 2004. Thereafter, on November 9, 2004, the case was converted to one under chapter 7 and James B. Angell was appointed the trustee. Prior to the debtor's bankruptcy filing, Ray J. Pennington, Inc. worked as a sub-subcontractor for the debtor on several jobs. Within the ninety days prior to the debtor's bankruptcy filing the defendant received three checks from the debtor totaling $7305.48.

On July 14, 2006, the plaintiff filed this adversary proceeding, and an amended complaint was later filed on August 23, 2006. The amended complaint alleges that the payments to the defendant from the debtor within ninety days of the debtor's bankruptcy filing constitute preferential transfers. The plaintiff seeks to avoid those transfers pursuant to 11 U.S.C. § 547(b) and recover them under 11 U.S.C. § 550(a).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

*Preferential Transfer Elements*

Pursuant to 11 U.S.C. § 547(b), the trustee may recover certain preferential transfers made by the debtor in favor of specific creditors. In order for the trustee to avoid the transfers made by the debtor to the defendant, he must show that the transfers (1) were to or for the benefit of the defendant; (2) were for or on account of antecedent debts; (3) were made while the debtor was insolvent; (4) were made on or within ninety days before the debtor filed bankruptcy; and (5) enabled the defendant to receive more than he would have received if the transfers had not been made. 11 U.S.C. § 547(b). The Code places the burden on the trustee to prove the avoidability of the transfers. 11 U.S.C. § 547(g).[1] Even if the elements of a preference are established under § 547(b) a transfer may still be nonavoidable if it falls within one of the

---

[1] As to the third element, there is a presumption that the debtor was insolvent during the ninety days prior to the petition date. 11 U.S.C. § 547(f).

categories set forth in § 547(c). The burden of proving the nonavoidability of the transfer is placed on the creditor against whom avoidance is sought. Id.

It is not contested that the trustee has established the first four elements of a preferential transfer under § 547(b). The defendant received at least three payments from the debtor within ninety days of the petition date, and those transfers total $7305.48. At the time of each transfer, the debtor was insolvent, the defendant was a creditor of the debtor, and the transfers were made to or for the benefit of the defendant. The only contested element relates to whether the defendant received more than he would have received if the case was under chapter 7, the transfers had not taken place, and the creditor received payment of such debt to the extent provided by the Code. 11 U.S.C. § 547(b)(5). The focus of the fifth element is not on whether the defendant would have received payment from someone else for its claims. Instead, the court must determine whether in a chapter 7 liquidation there would have been enough funds to pay this creditor's claim out of the estate if it had not been preferentially paid. Smith v. Creative Financial Management, Inc. (In re Virginia-Carolina Financial Corp.), 954 F.2d 193, 199 (4th Cir. 1992). The trustee submitted an affidavit that is sufficient to establish that there are inadequate funds to provide a payout in full to unsecured creditors, and this fact is not contested by the defendant. If the defendant had not been preferentially paid, it would not have received the full amount of its claim out of the debtor's estate. Therefore, the trustee has met his burden as to the fifth element, and all the elements of § 547(b) are established.

*New Value Defense*

The court must next consider the affirmative defense raised by the defendant pursuant to 547(c)(1). Section 547(c)(1) provides that a preferential transfer may not be avoided to the extent

4

the transfer was "(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange[.]" 11 U.S.C. § 547(c)(1). For the purpose of § 547 "new value" is defined as,

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]

11 U.S.C. § 547(a)(2).

The defendant establishes that the three post-petition payments were made on account of work performed at nine different locations, as evidenced by its job invoices. These jobs fall into three categories: 1) government projects with government required payment bonds, 2) public projects with surety bonds, and 3) materialman's lien right projects.

As to the third category, the defendant argues that if it did not receive payment for its work it had a right to file a materialman's lien against the underlying property. The defendant maintains that by accepting payment from the debtor it gave up its right to file such a lien. Accordingly, the debtor asserts that giving up its rights equates to new value. The United States District Court for the Eastern District of North Carolina confronted a similar issue in Precision Walls, Inc. v. Crampton, 196 B.R. 299 (E.D.N.C. 1996). In that case, a subcontractor claimed that by accepting payments from the contractor it provided new value by giving up its inchoate right to file a mechanics and materialman's lien. Id. at 301. The court in *Precision Walls* rejected this argument. Id. at 303. Instead, the court found that N.C. Gen. Stat. § 44A-18(1) provides a subcontractor the right to a lien upon funds owed to the contractor arising out of the relevant

improvements. Id. at 302. In order to be entitled to priority status over the interests or claims of others in the funds, the creditor must perfect its lien by filing written notice with the obligor. Id. If the creditor fails to perfect its lien, it is not entitled to the status of a secured creditor. Id. at 303. Thus, perfection of the lien is required, and a creditor's contention that its receipt of payment should excuse its failure to perfect because it could have perfected the lien had it not received payment was rejected. Id.

The defendant in the present case had no lien rights with respect to the property of the debtor because it never perfected its lien and gave up nothing by accepting payment. Based on controlling law in this district, the court rejects the defendant's argument that giving up its rights to file a materialman's lien against the underlying property constitutes new value.

The jobs involving government payment bonds and surety bonds require an analysis distinguishable from the third category. With respect to categories one and two, the defendant contends it released its rights against the project funds and thus gave new value to the debtor. The defendant maintains that if it had not received payment from the debtor, it would have immediately filed a claim against the bond on the project. In those situations, the bonding company would have immediately asserted a lien on funds that were still owed to the debtor but were in the hands of the general contractor. This would have prevented the debtor from ever obtaining the money.

This "indirect transfer" theory was discussed by the United States Bankruptcy Court for the Western District of North Carolina in, In re Lockwood Greene Engineers, Inc. v. Binsky & Snyder, Inc. (*In re* J.A. Jones, Inc.), 361 B.R. 94 (Bankr. W.D.N.C. 2007). *In re J.A. Jones, Inc.*, involved a chapter 11 creditor committee which sought to avoid a number of preferential

transfers made by the debtor, the general contractor, to the subcontractors. Id. at 97-98. The court took a close look at the division in the case law on the issue of whether the release of inchoate lien rights provides new value to the debtor. Id. at 102-03. The court recognized the primary variant of the cases involved was whether the owner owed money to the debtor on the project at the time the preference payment was made. "If the owner still owes the debtor, then its indemnity claim can be setoff and is secured. In this context, most courts consider the 'indirect transfer' to provide new value. If there is no debt to be setoff, however, then the owner's claim for indemnification is simply an unsecured debt and there is no 'new value.'" Id. at 103.

The facts in this case are slightly different then those of *In re J.A. Jones, Inc*. but the analysis is the same. Partitions Plus was a subcontractor on the bonded projects and the defendant was a sub-subcontractor. In order to have a new value defense, the defendant must show that had it not received payment from the debtor, it would have immediately filed a claim against the bond on the project. It must then show that at that time the debtor was still owed funds by the general contractor on which the bonding company could have asserted a lien.

At this time, the court finds the defendant has not presented sufficient evidence to determine that its release of its claim against the project funds in exchange for payments constitutes equivalent new value so as to provide a § 547(c)(1) defense. However, the court does find that such a release could constitute new value, provided the requisite showing is made.

## CONCLUSION

Based on the forgoing, the plaintiff's motion for summary judgment is ALLOWED in part and DENIED in part. The plaintiff has met his burden of establishing that the defendant received a preferential transfer under § 547(b). However, there is a material issue of fact as to the

defendant's new value defense, and the defendant's motion for summary judgment is DENIED.

The defendant's motion to amend its answer to correct a typographical error  is ALLOWED.

**"END OF DOCUMENT"**